We'll proceed to the next case, Iraq Telecom Limited v. IBL Bank. Okay, we have Mr. Schaffer arguing for the appellant. You're reserved three minutes. You can begin whenever you're ready. Thank you, Judge Bianco. May it please the Court? Your Honor, we have a straightforward case for attachment under the statutory factors, as the district court in this case effectively found. The only dispute is how much will be attached, and only due to legal errors in our respective submissions did the district court limit the amount well below the amount that Iraq Telecom is expected to recover on this under undisputed facts in the pending arbitration. The undisputed facts, Your Honor, translate to the likelihood of success. IBL has already been found liable for the fraud in question, and the undisputedly caused damage is far exceeding the amount that was thought to have attached. And letting these longer honors is undisputed on this point as a fraud that it makes IBL jointly and separately liable. I thought they had to be acting, whether it was caused or not caused, that they had to be acting in concert. You could cause something, but not be acting in concert with someone else, right? I thought, maybe correct me if I'm wrong, that we'd have to show acting in concert. Your Honor, of the judge's decision, I think, correct me if I'm wrong, it's the Department of the Decision Office. But it's not causation, it's acting in concert, right? Okay, so there was no finding by the arbitrator of acting in concert, right? Well, Your Honor, in our respectful reading, yes, there was, and I actually think Judge Koch acknowledged that they had found that IBL had been acting in concert while participating with the other fraudsters. They gave back $96 million in fraud to Barzani. Maybe you can help me with this. The conscious decision was made not to seek the damages in the arbitration, right? I understand that, but as a result of that, the arbitrator then did not make a finding of joint and several liability. The sentence is clear. Declined to find, right? As did the total aggregate damages. Right. Not as attorneys' fees and not to the interest on that. That was joint and several liability. Right, the $3 million. $3 million. Exactly. Right. But the rationale for that, my friends on the other side have never articulated the principal distinction between that joint and several liability and the liability of the fraud. But let me just finish my question. You're suggesting to us, even though they explicitly said we are not deciding this, like, no, they really did decide it. They really did find acting in concert. They just didn't realize that they actually found joint and several liability. Am I missing something? Isn't that what you're saying? I think in substance, they identified the participation in the fraud that if they didn't use the words in concert, it necessarily translates to that. And take the usual case where you don't have an article finding that establishes the liability of the fraud. Or we're just arguing to you here's how the fraud goes. When you look at it that way and you realize that IBL intentionally committed this fraud, there is no way to formulate that, and the other side has not tried to formulate that, in terms that don't have IBL acting in concert with Barclay, to whom they take back $96 million of the amount they received, and the whole fraud was designed to conceal the fact that he, in fact, collateralized his share of it. So you're not arguing that they found acting in concert. You're just arguing that the facts that they did find will ineluctably lead to that conclusion. I think both things are true. I don't really need to agree with you on the first or agree with you on the second. When they found that IBL was intentionally liable for this fraud, given the record of the fraud, I think it undisputedly follows, in fact, it follows inextricably from that, that they were acting in concert with Barclay. Because there's no way to describe this fraud in our community that does not have them actively participating with them, especially when, again, they take back $96 million of the amount that they received. Those were the terms of the fraud, and it was all meant to induce my client to compromise its security interests under false pretenses. And did I hear you correctly? Did you say you think that's what the district judge recognized? I do think that. Where? When she analyzes life-changing successes in the special appendix, in that portion of it, I am— Are you looking at SPA 33? SPA 33 to 35. And I read her there to be saying, yes, they effectively were found to participate in a fraud for which they would be jointly and separately liable. Either these two— The sentence, Iraq Telecom has shown that it's likely to demonstrate in the second arbitration that IBL acted in concert with Barzani to defraud Iraq Telecom. That's exactly it. That's the one. That's the one. All right. And she said it's notwithstanding that. Right. She implied that the arbitrators would deviate from that expected finding at that time. All right. Let me just ask you on the extraordinary circumstance issue of whether or not, even if the requirements are met, whether extraordinary circumstances allows a court to use its discretion. I don't—the Cargill case, to me, basically says that. Maybe you think the Court of Appeals of New York might not follow the First Department, but I can't—I've read that sentence. It's a short opinion, so I can read it a lot of times. But I've read that sentence over and over again, and it seems pretty clear. They say, even if plaintiff established a statutory basis for attachment of the accounts, given the nature of correspondent banking and its importance in international transactions, the court did not abuse its discretion by denying the request. So how can that be read any other way? A few great points about it. This court has heard the decision before it, and it's like the CBI, too. But the CBI, too, I looked at that. CBI, too, basically just piggybacked on CBI 1 and said, look, we didn't have to decide this in CBI 1. We don't have to decide in CBI 2. It didn't even acknowledge Cargill. It didn't look at the issue again. It just said, we don't need to do it here. So it's not like we looked at Cargill and said, oh, we don't agree with it or we think it could be read differently. One reason why the court did look at it is because it's commonly cited in the briefing in that case. And part of what CBI 1 had pointed out is all the New York Collective Vision decisions that had said, once we find the statute, we back it up. Whether it was briefed or not, in CBI 2, it was pretty clear. We said, we don't have to worry about it. We don't have to look into it. We didn't opine one way or the other. A few more points about Cargill.  The court has to issue an attachment. That is our position. I don't think you need to decide this case that way because extraordinary circumstances need to truly be extraordinary. And here, they only highlight the need for attachment. Well, that's your fallback argument. But we're still trying to decide whether you can even look at extraordinary. I mean, to the extent there is any discretion, it would seem to me it's a matter of common sense that you can look at. The existence of extraordinary and compelling circumstances. If I may, I don't mind. Go ahead. I think that you should not go down that path. There is nothing to guide that exercise of discretion. And CBI 1 very clearly ruled out unfettered discretion on district court's part when it comes to this. Number two, the 6202 in the New York statute says you can attach whatever you from the Collective Procedure to the judgment. There are co-extensions. And so if this court is now to say that there can be such a thing as extraordinary circumstances, they get in the way of the attachment. There's no statutory reason why the same free-floating discretion wouldn't exist to stay in the way of a correction on judges, too, under the New York statute. That, I think, is a parallel. But no matter how catastrophic the attachment could be to innocent third parties, to the public, a judge would say, I'm sorry, I can't look at what's going to happen to innocent third parties and or the public? It may bear on statutory factors. What statutory factor? If all the statutory factors had been met, what would that come under? I think that the legislature should be making those calls. They should decide that banks can be subject to attachment. That's a categorical decision by the legislature. This bank committed the wrongdoing, and it's insolvent, and it's taking affirmative measures to frustrate efforts to collect the money. For all those reasons, unless and until the legislature says, you cannot attach bank assets, I think there should be no preliminary circumstances on these facts. But to answer your question about the car bill, I think it is somewhat cryptic, Judge Bianco, but I would commend the court for responding to page 16 of that in the car bill. When it seems to be saying, and this is how Judge Berman did it rightly, I think, in grade 3 of car bill 2, is there the customer response for being attached. In this case, in grade 3 of the report, we have carved out funds to flow through the corresponding accounts. Because there could otherwise be a risk, Judge Bianco, that those monies, as they come out of the car bill. I understand. That goes to the issue of whether it's extraordinary or not, and not whether or not there's such an exception. As you say, it's a very compact decision, and it's just one sentence. All right. All right. But it seems to be emerging those concepts. All right. I'm not saying that there are preliminary circumstances, even when it's statutory factors. All right. Thank you. You're reserved three minutes. All right. Mr. Berger. Good afternoon. David Pease of the court. Mitchell Berger for IDL Bank. The standard rule here is abuse of discretion. This report did not abuse its discretion. In modifying its own ex parte de facto release of the full record, it demonstrated extraordinary circumstances. Well, I think there's one problem at a minimum. Maybe you can correct me if I'm wrong. Why wouldn't they be entitled to at least an attachment of 8-point-something, I forget what the amount is. 9-2. 9-2. 8.92. At a minimum, the court determined they were likely to prevail at that level of damages, and to me, just didn't analyze it that way, just gave them only a $3 million attachment. Can you explain that? Yes, I can, Your Honor. First of all, because events occurred after the attachment order, it would be no more than 5.92 now, because Judge Coates subsequently confirmed the $3 million attorneys to be on board, which plus 5.92 equals 8.92. Right. And because of the supersedious bond, which moves any need for an attachment of that $3 million. Now, the second point is the reason should be denied. No, no, no, that's not what she said. She said to attach $42 million would cause harm, all these different harms. She never said, and also, even the $5 million caused the harm. There's no indication that $5 million is below the $17 million in reserves that the bank has to keep. You can't really argue to us today. I certainly am not going to argue to you. Okay. $5.92 is less harm than $17 million. Nothing is going to happen if the bank attaches tomorrow. If they attach, not the bank. All right, so let's not. I do want to address Your Honor's question. She did say, but for the extraordinary circumstances, I would have attached the 5.92 plus the 3, because she did consider and express the rejected idea of attaching 5.92. All right. It caused an undescribed amount of service. Can you address, Judge McDinney pointed out the page, and I cited a sentence. On Special Appendix 33, I really didn't understand. The district court seems to say that they are likely to demonstrate that there was acting in concert, but then somehow found, ultimately, they weren't likely to be able to recover the $97 million. So you agree under Lebanese law, if they demonstrate acting in concert, there's joint sever liability, right? I think everybody agrees on that. If that provision applies, and I'll have several answers to that if I may, which is— I thought that's what your expert said. The expert said, yes, it's in concert. Right. I don't know whether or not the in concert is sufficient standard alone to attach the $97 million that the direct telephone saw. What the district court said was, okay, that's my starting point. How do I end it? My starting point is, given that the first arbitral tribunal expressly said it would not live in the prison, made a declaration on them, which is including in concert, that bouncing has to be seconded. And you don't have to take my report. That's why they're pursuing the second arbitration. They know that that was not established in the first arbitration. And in the second arbitration, what the arbitrators will take into account of and what the district court will view is the fact that, A, there was no binding in concert in the first arbitration. And, B, the disparity of this report pointed out, highlighted by the direct telephone, that Barzani was the primary wrongdoer of the district court. But that's the part that I want you to address, because maybe you can point to where your expert says, even if they're acting in concert, that's somehow in the Lebanese law. If there's disparity in how much money you got out of it, that's somehow in the Lebanese law, and you're not jointly, separately liable. I didn't see that anywhere, but maybe I missed it. Did your expert say, even if you act in concert, if you didn't keep a certain amount of money, you're not going to be liable for it? I didn't see that. No, the expert didn't say it. That was a question of New York law that Judge Cote replied and decided whether or not there was a likelihood of success. That was a CPL argument. What Judge Cote said was, because I'm obliged by decisions of this court, including the S.G. Allen v. Messick case, to understand that arbitrators are charged primarily with finding an equitable result, I'm looking at that. Ultimately, she zeroed out that point by focusing, the court knows, on extraordinary circumstances. So suppose I lose on all of the questions you're asking. She still said, I now have the right to consider extraordinary circumstances. And those extraordinary circumstances are incredibly detailed. Not only detailed, but when you look at the record, it is. She seemed to be discussing the extraordinary circumstances in terms of $97 million as opposed to a lesser amount, like $8.92 million or $28 million. Wouldn't the equities weigh differently if the amount were a lot lower? Certainly, if the amount were a lot lower. And then he, as I've already pointed out in the brief, indicated in this report, Judge Cote expressly asked the parties to address this hearing. What are the extraordinary circumstances in four different intervals? It was 3, 8, some other number, and 97. She considers that entire range. And we, I think, work right in the center. Of course, it's a sliding scale. And I couldn't stand before this court and say, oh, of course. You know, it's 0 or it's 97. It is a sliding scale. And to that end, I would say that when I was asked by the motions panel, in this case, what's the number in the short run that we'll all come up with, I acknowledged it. I mean, either Judge Ardine or Judge Gattel asked this question. Don't you have to keep $17 million here anyway? So I would be foolish to say, oh, my goodness, any number other than 3 is the wrong number. But the point is, and I'll ask the court to take judicial notice. Judicial notice of it from this morning's argument in the back case. There is everybody out there trying to get money out of Levin and his banks, including deposits. And one of the things that was asked for in that case, and was asked for in every case, is the fact that the district court cannot take holistic consideration of equitable factors like, okay, where's the number I need to send this? Why wouldn't 17 be a potential one that, at a minimum, attaching up to 17 wouldn't be a problem? Well, the short answer to that, and I mean this in kind of a respect, is that the reason why the district judges get paid is to do that job, just to weigh that. You can, in this court, weigh that. Actually, I said it the wrong way. Not up to 17. You have to keep $17 million in reserves, or it would be something beyond 17. Right? No, that was the point Judge Gattel raised in a moment earlier, arguing on the motions. The point is, there is a tipping point. And a tipping point is a cliff. So I asked the court to consider this. What we know from the undisputed record is that 17 is the number, but there's also 12 million, which should move on to the customers. That's precise words in the cardinal case used to fund health or the benefit. And once we see 17 million who are now inter-funded, health and benefit customers, I can represent the court. It's not on the record, but it's a development situation. But what's happening right now, because of the short-term standstill order entered by the motions, that un-agreement, is that depositor transactions are being held, are being queued, because there's not enough liquidity in data-based accounts, because of the temporary standstill to which we agreed at the urging of the motions. That means, by definition, that their deposits are being queued, and a rock-tile account has gotten an unwarranted priority. The court presented an un-liquidated claim for $97 million over depositors who they've conceded before Judge Koch are now going to be treated prior to suing. Well, they're not going to be treated prior to suing anymore, because a rock-tile account is fronting the line and blocking transactions from going forward. So, yes, that number could be set anyway. Judge Koch was asked to use it for discretion. What would happen at 17 million? At 17? Right now it's at 28, and you're saying it's creating these problems. What would happen at 17 million? At 17, I mean, to the extent that these numbers, obviously the lower the number, the less certain. I wouldn't argue anything different about that. And I don't know if Judge Calabresi is going to answer that question. Part of my problem is that Judge Koch just went to the lowest number. That's part of my problem. She just went to the lowest number. There was a high number, obviously, which created a lot of problems, and there was 3 million, and she went to the 3 million. I know you said there was consideration of some numbers in between, and there was questions, I guess, about that. But I'm not sure there's a record, sufficient record, to decide that 17 million would be extraordinary. Well, all I would say to that, Your Honor, is that I've read probably not as many cases that say this as Your Honor has, but it says just if the district court has made a decision that is in the permissible range of discretion, then it's not a reason for discretion, even if three judges in this Court might have weighed the facts differently. She didn't exactly give a summary of 320 lines, she looked very hard at it, and explained her logic, and she said in her concern it was a little bit difficult. If this Court has discretion, the way in which it can comply, I'm the first to tell you, Your Honor, that we have to keep 17 million here anyway, which is why I would like to make this argument on the same line that I've done. If we have to keep that money here anyway, then there really was no continual need for an attachment, because as in the Meridian case, we've cited in our brief, the money is here because the regulator told us it has to be here. But doesn't that definition make this not extraordinary? If you have to keep the money anywhere, attaching money that you're saying we have to keep there anyway, is certainly not an extraordinary circumstance where the Court wouldn't attach it. And they make an argument that somehow the money can dissipate even though you're required to keep it here. So why wouldn't the district court make sure that that doesn't happen? And they're concerned about that. You're saying that's not going to happen. But why wouldn't the district court say, well, let's not take any chances. They have to keep it here anyway, but I'm going to attach it to make sure it stays here. If I may, Your Honor. Yeah. I kind of want to answer your question with respect to this precisely the conundrum that the district court considered in the Meridian international bank case that we cited. What it said was, I can look at this coin on either side, and I can say because the money has to stay here, there's no continuing need. That kind of has any need for me to consider extraordinary circumstances. And no continuing need would be to say, it's attached to number 7502. But then the district court took the coin and said, well, OK, you think that doesn't eliminate continuing need. So I'm going to use my superdemeanable discretion to say it's extraordinary. However you look at it, the Court doesn't want to reach the question of whether there's extraordinary circumstances discretion. The fact that we have to keep $17 million here because of EDL certificate 154 would obviate a continuing need for an attachment. But if we rule on that, and the regulator changes the number to $16 million tomorrow, I assume the regulators are responsive to events in the world, right? So if they change it to $16, and we thought the number should be $17, then you've got to go right back to the Court every time the regulator changes their mind, right? Respectfully, the record is exactly the opposite. What it says is that $17 million is part of an in-process central bank group plan to fulfill the requirements under 154, and just like in Meridian International Bank, impact IDL is obliged to put more money in, not less. So unless the EDL certificate changes, that's what I'm asking. The regulator can change the circular, and if we're going to issue a ruling, or say the district court should have issued a ruling saying we don't need to do anything because a regulator has already done something, and we know a regulator can take different action, all that does is just potentially kick the can down the road because then someone's going to have to come running to us as soon as the regulator changes something and say, wait a minute, your decision was premised on a regulatory action that's no longer in place. Please rethink things. To which I would say, Judge Arnene, that all of the attachments deal with that realm of circumstances. They show lots of things can change in the future, but that's speculation on the attachment-seeking part of the side of the ledger, when what we have on the other side of the ledger is here, concrete facts showing no circumstances that those are going to change. The court has fully heard this morning and this afternoon. What would be the sanction if the bank ignored that circular and moved money, the $17 million out of the United States? What would happen? But that, with respect to Judge Brown, that raises an impossibility. Money, U.S. dollars, cannot be dealt with overseas. They have to be dealt with here. That's the reason why each jurisdiction question. I'm sorry, but who's circular are we talking about? We're talking about the central banks of Lebanon. Right. So if you're saying the money can't be moved out of the United States because of a Lebanese regulator, I mean, maybe that's true that it can't be moved to Lebanon, but if it were moved to, I don't know, I'll make it up, Dubai, right? So I guess I don't understand the question if it is actually an impossibility. Lebanon, if the Lebanese central bank says something, then, by definition, U.S. dollars can't be moved? Well, I think I was addressing another part of your question, so let me be clear, which is the reason why dollars are here is not because they're a safe deposit box that people can save from debts in Lebanon. Because the Lebanese deposit or IVL need access to dollars. The only way that dollars can be exchanged for their debt is through a U.S.-based corresponding account. That's why they're here. And the circular is about which jurisdiction, not only identifying the amount that has to be kept in the corresponding account, but make clear, consistent with reality, that they have to be kept and transacted in whose corresponding accounts. They have to be transacted in the corresponding accounts in the United States of necessity, because that's the only place that dollars are here. That's why IVL has a great group of accounts, an account in England, a Swiss franc account in Geneva, and a euro account in Europe, because that's where this currency came from. All right. All right, thank you, Mr. Berger. Thank you. Okay, Mr. Schaffer, you have three minutes in rebuttal. Thank you, Your Honor. The question that was discussed about where do you draw the line to what you asked of Judge Bianco and Judge Schaffer, there's nothing in the record that really answers that question in any principled way. There's no guidance on what are extraordinary circumstances and how are they to be weighed, and there's certainly nothing that Judge Koch had available in evidence to say there's a magical tipping point between $3 million, which is $5.9 million, versus the $8.9 million, versus the $17 million, versus where we are right now, which is $28 million, versus the $42 million that we are seeking to have attached, versus the $96 million and $97 million that we go to at the end of the arbitration, versus $150 million that were attached in Europe without regard for these concerns. And the sky has not fallen through any of that problems, not through any of them. So the notion that there are extraordinary circumstances that require limiting the attachment the way that it were loaded, I think is totally unsupported by the record and really unsupported by logic as well. Can you address his last argument? He's saying it's impossible. I don't fully understand it because I'm not an expert in this. It would be impossible for IBL to take that $17 million out of the United States. What's your response to that? I'm as baffled by it as you are, Your Honor. I don't know why we're fighting then about anything short of $17 million in attachment because they should be indifferent to that, as I understand these converterizations. And to your question, Your Honor, these circulars are not regulations. In large part, they are voluntary. A few of them are supposedly opposed to the law, but that's the exception. They're not the rule. They've undisputedly been in violation of at least one of the circulars requiring that they have 3% of their deposits abroad. They've been in violation of that. There's been no sanction for it. And let's be truthful about the Central Bank of Lebanon. They're here supporting their bank. They're not supporting my client. The fraud that we're talking about happened under their watch. They're not going to be looking at the interests of my client as a judgment holder that's afraid of the fraud. The only thing that protects my client is the attachment that New York Law gives them under the statutory provisions. And everything else that we're talking about, the concerns of the customers here, whether the bank has an equity, that's all under the Central Bank of Lebanon clause. And if they see that there's a problem, they have assets available in Lebanon to the tune of more than $4 billion that the Central Bank of Lebanon can be released to cope with these services. I don't think it's the job of the New York courts or the district court to be figuring out what are all the contingencies that may arise from this particular attachment. That's governed by the statutory provisions. Let the Central Bank of Lebanon and let this bank do their work, because I guarantee you, if they are left to their own devices, this money will not be available to my client. Because they can move heaven and earth, and they have already done that, to make sure that these assets cannot be... What's the status of the second arbitration? Is that moving forward? What's going on? It's moving forward, despite their construction. They do not have demanding extension time to answer the arbitral demand. They wouldn't select their arbitrator. They haven't paid the arbitration tribunal. It's still moving forward. We have two of the arbitrators. They're picking their chair. We're trying to move that forward just as fast as we possibly can. All right. All right, thank you. I don't know about time or hour, but thank you. All right. Can I ask, can you just offer a record of sight for the court at the moment? Sure. What's the record of sight? The record of sight is from their own experts' declaration. Professor Diab will find this after they have paragraphs 13 and 24 to 25 in the appendix pages 35 to 21 and 35 to 25 to 26, which I think will help answer Judge McGonigal's question, Judge Cahay's question about why dollars have to go to the United States. All right. All right, thank you. That was very helpful. Thank you to both of you. We'll reserve decision. Have a good day.